UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                     :

BENONI LENNOX DIXON and PAULINE
DIXON,

                         Plaintiffs,           **ORDER ADOPTING
REPORT & RECOMMENDATION**

                -against-                               03-cv-343(DLI)(VVP)

THE CITY OF NEW YORK and SHARON
SWEETING-LINDSAY,

                        Defendants.

------------------------------------------------------------- x

**DORA L. IRIZARRY, United States District Judge:**

        In this action against the City of New York and a city employee, plaintiff Benoni Dixon alleges that the City's Department of Corrections ("DOC") and defendant Sharon Sweeting-Lindsay (collectively, the "defendants") engaged in unlawful retaliation against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law.[1] The defendants moved for summary judgment on all of plaintiff's claims pursuant to Fed. R. Civ. P. 56. By order dated October 23, 2006, the motion for summary judgment was referred to U.S. Magistrate Judge Viktor V. Pohorelsky to prepare a Report and Recommendation ("R&R"). On September 14, 2007, Judge Pohorelsky issued an R&R, recommending the motion be granted in part and denied in part. Plaintiff filed timely objections the R&R. No objections were filed by the defendants. For the reasons set forth below, the court adopts the R&R in its entirety.

---

[1]     Plaintiff is referred to in the singular in this order because his wife Pauline Dixon, a co-plaintiff, is suing only in a derivative capacity and asserting a loss of consortium claim that is not cognizable under the statutes giving rise to plaintiff's main claims.

# I. SUMMARY OF THE MAGISTRATE JUDGE'S FINDINGS

Plaintiff, a senior cook employed by the New York City Department of Corrections, asserts that he was targeted for retaliation by his employer because he had filed a number of lawsuits and administrative complaints alleging employment discrimination. On summary judgment, the Magistrate Judge carefully considered four factual bases of retaliation alleged by plaintiff and rejected three of them outright.

First, plaintiff alleges that after he filed his first federal lawsuit in September 1999, the DOC retaliated against him by investigating charges of gender discrimination that a colleague filed against him in May 2000. The Magistrate Judge correctly held as an initial matter that the investigation itself cannot be considered retaliation *per se* because an employer cannot be barred from investigating a complaint against an employee simply because that employee had engaged in activity protected by Title VII. (R&R 15). Though the DOC's investigation yielded insufficient evidence to substantiate the colleague's charges against him, the Magistrate Judge found no evidence to support plaintiff's own assertion that the charges were trumped up or to suggest that the DOC's investigation was improper. (R&R 16-17). There also was no evidence of causation connecting plaintiff's lawsuit against the DOC and the investigation of the charges against him. (*Id.*).

Second, plaintiff contends that after he filed his second federal lawsuit in July 2001, the DOC retaliated by transferring =him on short notice from the George Motchan Detention Center for Men to another corrections facility, the George R. Vierno Center ("GRVC") in September 2001. The Magistrate Judge found the employer's action did not constitute *prima facie* retaliation because the plaintiff could not show that he was demoted in position or lost responsibilities or that the transfer was otherwise materially adverse to his employment. (R&R

19). The Magistrate Judge found plaintiff's third contention, that the DOC subjected him to excessive monitoring and scrutiny, to be generally unsupported by facts uncovered in discovery, save for one specific episode, the occasion for the fourth factual basis of plaintiff's retaliation claim. (R&R 20).

The fourth factual allegation of retaliation is based on the events of March 5, 2002 and the aftermath. On that day, plaintiff was attending a seminar at the DOC's Training Academy in Middle Village, Queens when defendant Sweeting-Lindsay approached and asked him to sign a performance evaluation prepared by the DOC. (R&R 4-5, 23-24). Sweeting-Lindsay was the Deputy Executive Director of Operations for Nutritional Services at the DOC and acted in a higher level supervisory capacity to the plaintiff. (R&R n.3). She was responsible for his transfer to the GRVC facility on Riker's Island in September 2001 (*See* Declaration of Wale Mosaku, Mar. 28, 2005 ("Mosaku Decl.") Exh. H), though their meeting at the seminar may have been their first face-to-face encounter. (R&R 29; Excerpt of Pl.'s Deposition attached as Exh. Y to Mosaku Decl. at 48). At the time of this meeting, plaintiff's second federal employment discrimination action was pending. The evaluation was prepared at the request of the New York State Department of Human Rights which was responding to a complaint plaintiff filed in October 2001 alleging retaliation for his job transfer. The evaluation rated his job performance from August 1999 to August 2000 as four out of five or "very good." (R&R 23, nn.12&13). What kept him from receiving the highest rating, according to the evaluation, was his "knack to instigate trouble within his own crew." (See R&R n.4 citing Klepfish Decl. Exh. L).

Plaintiff refused to sign the evaluation right away, wishing first to read it in its entirety. What happened next is not entirely clear from the record. According to a subsequent DOC

3

investigation, Sweeting-Lindsay then allegedly grabbed plaintiff arm and threatened that her husband would hurt him. (*See* Chronology of Events Relating to an Allegation of a Threat, Exh. II to Mosaku Decl.). That afternoon, plaintiff reported the threat to the Personnel Office at the Academy. He also complained of feeling dizzy and was found to have high blood pressure. He was taken by the emergency medical service to St. John's Hospital where, at his insistence, Sweeting Lindsey's alleged threat was reported to the police. He was released from the hospital that day, and spent the next six months on medical leave.

Two days after this incident, Sweeting-Lindsay attempted to obtain an order of protection from Queens Criminal Court against the plaintiff. In the application, she relied on documents she may have removed and copied without authorization from plaintiff's personnel file. Although no protection order was issued against plaintiff, the Magistrate Judge found Sweeting-Lindsay's questionable conduct may be probative of her intent. The Magistrate Judge concluded that the plaintiff had pleaded sufficient factual allegations to support a *prima facie* claim of employment retaliation regarding the events of March 5, 2002. He found that a reasonable employee, in the face of defendants' conduct, could be deterred from making additional complaints. (R&R 23-24). On March 7, 2002, plaintiff voluntarily dismissed his second federal lawsuit citing health reasons for his inability to prosecute. (R&R 4 *citing* Mosaku Decl. Exh. E).

In addition to his retaliation claims, plaintiff also alleges that the defendants subjected him to a hostile work environment in retaliation for his protected activities. The Magistrate Judge determined, however, that plaintiff could not establish this claim based only on the single incident of March 5, 2002. (R&R 29). The R&R also recommends dismissing plaintiff's Title VII claim against Sweeting-Lindsay because Title VII does not impose liability against individual defendants, and the loss of consortium claim by plaintiff's wife because this derivative

4

claim is not cognizable under the statutes upon which plaintiff's main claims rely. (R&R 31, 33-34).

## II. PLAINTIFF'S OBJECTIONS

In his objections to the R&R, plaintiff asserts broadly that the entire summary judgment motion should be denied, but specifically objects to two aspects of the Magistrate Judge's findings. First, he contends that the Magistrate Judge erred in not crediting his account of the DOC's investigation of his colleague's charges against him, which formed one of the factual bases of his retaliation claim rejected in the R&R. Second, he argues that the alleged threat he received from Sweeting-Lindsay on March 5, 2002 was sufficiently severe, when objectively considered, to have transformed his work place into a hostile environment. The court, after *de novo* consideration of his specific objections finds the objections to be without merit. To the extent the plaintiff objects to any other part of the R&R, he has procedurally defaulted for failing to make the objections more specific.

## III. STANDARD OF REVIEW

When no objections to the R&R are made, the court may adopt the R&R if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F.Supp.2d 250, 253 (S.D.N.Y. 2005) (citation omitted). When objections are made, a district judge must make a *de novo* determination with respect to those parts of the R&R to which any party objects. The district court may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b); *See also United States v. Raddatz,* 447 U.S. 667, 673-76 (1980).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). In drawing inferences in favor of the nonmoving party, "the court is not entitled to weigh the evidence." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000). Nevertheless, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). The court must deny summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## IV. DISCUSSION

### A. Objection 1

It is no doubt true that a district court, in trying to determine the existence of genuine issues of material fact for trial, must resolve all ambiguities and credit factual inferences that could be rationally drawn in favor of the non-moving party on summary judgment. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, on his first objection, it is plaintiff who is mistaken about the burden of the factual showing he needs to make for his retaliation claim to survive summary judgment. In order to create a genuine issue of material fact, the plaintiff must first present sufficient allegations to make a *prima facie* case of retaliation. At the summary judgment stage, plaintiff cannot rely on unsupported allegations and conclusory statements to make his *prima facie* case and expect the court to credit them in his favor simply because he is the non-moving party. *Johnson v. County of Nassau*, 480 F. Supp. 2d 581, 593 (E.D.N.Y. 2007)(internal quotations omitted).

Under the *McDonnell Douglas* burden shifting framework, a plaintiff seeking to make a retaliation claim must first make a *prima facie* case of retaliation by pleading three elements: (1) he engaged in a protected activity known to the defendant such as filing a complaint against his employer, (2) he was subject to employment action disadvantageous to him, and (3) a causal connection exists between his activity and the materially adverse change made against his employment. *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Once the plaintiff has made a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Johnson v. Palma*, 931 F.2d 203, 207 (2d Cir. 1991). Then, if the defendant has offered a nondiscriminatory reason to justify the materially adverse change in the plaintiff's employment, the burden shifts back to plaintiff to show that the nondiscriminatory reason offered by the defendant is pretextual. *Id.*

A defendant can prevail on summary judgment by demonstrating that the plaintiff's evidence is insufficient to establish an essential element of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). In this case, the moving defendants argue that plaintiff did not produce the requisite evidence to satisfy the second and third elements of the *prima facie* pleading requirement. It was plaintiff's burden to back up his allegation that the DOC's investigation was materially adverse to his employment and was causally linked to his lawsuit against the DOC. The evidence from discovery shows that the DOC had indeed investigated the colleague's complaint of gender discrimination against the plaintiff and ultimately found insufficient evidence to substantiate the colleague's allegations. These facts do not by themselves satisfy the second element of the pleading requirement and prove that the investigation was disadvantageous to his employment, for an employer could justifiably

investigate one employee's accusations of discrimination by another. The plaintiff offers no evidentiary support for his conclusory statements that the colleague's charges were without basis or that the DOC investigation was motivated by a "discriminatory purpose." (*See* Benoni Dixon Aff. ¶ 12, attached to Mosaku Decl.). He also provides no evidence to show a causal connection between the first federal employment discrimination action that he filed in September 1999 and the colleague's complaint against him in May 2000, which prompted his employer to investigate him. At the summary judgment stage, he cannot argue that the court ought to credit his unsupported allegations to make a *prima facie* case as true. The Magistrate Judge properly held this burden against him. Plaintiff failed to make a *prima facie* claim that the DOC's investigation of his colleague's charges was retaliatory. He cannot create a genuine issue of material fact out of a claim that is legally insufficient.

In contrast, on his retaliation claim based on the events of March 5, 2002, plaintiff has given sufficient facts to support a *prima facie* claim. He provided factual support for his account of the alleged confrontation with Sweeting-Lindsay, the adverse effect on his ability to work, and the possible deterrent effect on his protected activity, namely the withdrawal of his second federal action. The court agrees with the Magistrate Judge that while the record contains numerous factual inconsistencies, plaintiff had made a sufficient factual showing to make a *prima facie* case of retaliation based on the events of March 5, 2002, and is therefore entitled as the non-moving party to have the remaining factual ambiguities resolved in his favor on the summary judgment motion.

### B. Objection 2

In his second objection, plaintiff claims that the Magistrate Judge erred in granting summary judgment against his hostile work environment claim, which is based entirely on the

threat that he received from Sweeting-Lindsay on March 2, 2002 at the Training Academy.

The existence of a hostile work environment, in violation of Title VII, is established by a plaintiff showing that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.'" *Howley v. Town of Stratford,* 217 F.3d 141, 153 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993), *abrogated on other grounds by, Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 753 (1998)). There is no "magic" threshold number of harassing incidents that are required, as a matter of law, to state a claim. *See Richardson v. New York State Dep't of Corr. Serv.,* 180 F.3d 426, 439 (2d Cir. 1999). "Isolated instances of harassment ordinarily do not rise to this level." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000); *see also Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662, (1998) (holding that "isolated incidents (unless extremely serious)" are not discriminatory changes in the "terms and conditions of employment"). Generally, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive" but "a single act can create a hostile work environment if it in fact "works a transformation of the plaintiff's workplace." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004)(internal quotations and citations omitted).

Plaintiff contends that the single incident on March 5, 2002 was sufficiently serious to create a hostile work environment by pointing to his health reaction and the recommendation of his doctor and psychologist to stay away from the work place for six months. However, his health reaction and the recommendations of his healthcare professionals do not objectively demonstrate that the Sweeting-Lindsay's threats had worked a transformation of plaintiff's workplace. In fact, the incident with Sweeting-Lindsay took place at the DOC's training

9

academy in Middle Village where plaintiff was attending a seminar while his regular workplace is at the GRVC on Riker's Island in East Elmhurst. There is no evidence to suggest that his actual workplace environment was at all changed much less transformed by the incident. By all accounts, plaintiff had never before met Sweeting-Lindsay, who does not work at his workplace. Plaintiff offers no evidence of any threats by any of his colleagues at the GRVC either before or after March 5, 2002. As a result, the claim that a single incident in Middle Village objectively transformed his workplace environment on Riker's Island, fails as a matter of law. Accordingly, the court dismisses plaintiff's second objection and adopts the Magistrate Judge's recommendation granting summary judgment on the hostile environment claim.

## V. CONCLUSION

The court, having reviewed the portions of the R&R to which no specific objections were made, finds no clear error in record. Accordingly, the R&R is adopted in its entirety. Defendant's motion for summary judgment is granted on all claims except plaintiff's retaliation claim based on the events and aftermath of plaintiff's encounter with Sweeting-Lindsay on March 5, 2002, and plaintiff's assertion of personal liability against Sweeting-Lindsay under 42 U.S.C. § 1981 and the New York State and City Human Rights Laws.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2008

_____/s/_____
DORA L. IRIZARRY
United States District Judge